PAUL GELLENTHIN, PLAINTIFF-APPELLANT, v. J. & D.,
INC., A CORPORATION OF NEW JERSEY, DEFENDANT-
RESPONDENT.

Argued September 25, 1962—Decided October 22, 1962.

342

Mr. *Lewis M. Holland* argued the cause for the plaintiff-appellant (*Messrs. Warren, Chasan & Leyner,* attorneys).

Mr. *Leon S. Wolk* argued the cause for the defendant-respondent (*Messrs. Basile, Delchop & Wolk,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. This is an action for personal injuries sustained by plaintiff when he slipped and fell on an icy sidewalk. The case has been tried twice. The first trial resulted in a dismissal at the end of the plaintiff's case. On appeal there was a reversal, 62 *N. J. Super.* 224 (*App. Div.* 1960), and a new trial followed. At this trial there was a jury verdict for the defendant. The judgment entered thereon was affirmed by the Appellate Division, 71 *N. J. Super.* 226 (1961). We granted the plaintiff's petition for certification. 37 *N. J.* 53 (1962).

On the day of the accident, the defendant owned and controlled a large brick building on the northeast corner of the intersection of Anderson and Oakdene Avenues in Cliffside Park. This building, constructed by the defendant in 1956, fronted on Anderson Avenue and extended easterly along the north side of Oakdene Avenue, which in that area is a steep hill, sloping sharply downward from the intersection. Along Oakdene Avenue there was a public sidewalk which immedi-

ately bordered the wall of the building and thence ran past the defendant's paved driveway to the rear of it and continued in front of adjacent premises owned by Ranieri and Sciola.

The building was so constructed that the roof was pitched toward the rear, and any water from rain or melted snow was conducted off the roof by two leaders or drain pipes running down the rear wall. One of these leaders, placed on the corner of the building about 3½ feet in from the sidewalk, discharged the water in mid-air at a point several inches above the defendant's paved driveway. This driveway covered the rear of the property and part of it sloped toward and joined the sidewalk.

On December 5, 1957, at about 7:00 P. M., the plaintiff, on his way home from work, got off a bus on Anderson Avenue and walked down the Oakdene Avenue sidewalk alongside of the defendant's building. The night was dark and although the temperature had warmed during the day, it was now below freezing. The sidewalk abutting the defendant's property had not been shoveled since the heavy snowfall of the night before, but the snow had been sufficiently trampled during the day to enable the plaintiff to proceed. At the boundary line between the defendant's property and the Ranieri-Sciola property, the condition of the sidewalk changed, for the snow had been removed from the sidewalk in front of the latter property. The plaintiff testified that when he walked onto the Ranieri-Sciola sidewalk "a little more than a foot" he slipped and fell on ice on the sidewalk.

The plaintiff introduced proof that ice resulted from water which had been discharged by the defendant's leader onto the driveway and thence had flowed down the sidewalk, forming a "ribbon of ice" from the leader to the point on the sidewalk where he fell. There was further testimony that water had run regularly from the defendant's leader down onto the sidewalk since the time the building and the leader were first constructed, and in the winter it would freeze. The defendant's only witness, its president, admitted

that at the time of the accident a portion of the water from the leader would "go on the sidewalk" and run down by the Ranieri-Sciola property. However, the defendant brought out on cross-examination of the plaintiff and his witnesses that there was snow piled near the curb of the Ranieri-Sciola sidewalk and that there was snow on the defendant's sidewalk and driveway. The evidence thus presented the issue whether the ice upon which plaintiff slipped had been formed from water coming from the defendant's leader, or from other sources for which the defendant would not be responsible.

The trial judge instructed the jury:

"Now, in connection with the water situation, the law is that a possessor of land or property in this case a building and land, is legally privileged to make a reasonable use of his land, even though the flow of surface waters are altered thereby and causes some harm to others; but such possessor incurs liability when his harmful interference with the flow of surface waters is unreasonable.

Now, the issue of reasonableness or unreasonableness in determining a property owner's use of his land, and affecting the flow of surface waters becomes a question of fact to be determined by the jury upon a consideration of all the relevant circumstances, including such factors, as the amount of harm caused, the foreseeability of harm, which results, the purpose or motive with which the possessor acted, and all other relevant matters. In other words, the topography, all the conditions relating to the property in question. Then, also, in considering this question of reasonableness of use of the land which affects the flow of surface waters, is whether the use of the land outweighs the amount of harm which results from his alteration of the flow of surface waters."

In giving the above instruction, the trial court followed the determination of the Appellate Division in the first appeal of this case (62 *N. J. Super.*, at *p.* 232), that the opinion of this court in *Armstrong v. Francis Corp.*, 20 *N. J.* 320 (1956), required the application of the "reasonable use" rule to this case. The language of the instruction is taken substantially from the *Armstrong* opinion, 20 *N. J.* at *p.* 330. However, the trial court refused to charge the following instructions requested by the plaintiff:

"3. The main or primary purpose for which a sidewalk exists is to afford the traveling public a safe place on which to walk, and the ownership of the sidewalk, for all substantial purposes, is in the public.

4. Any obstruction unnecessarily incommoding or impeding the lawful use of a street by the public is a nuisance for which, upon the happening of an accident as a result thereof, the creator of the nuisance must respond in damages.

\*  \*  \*  \*  \*  \*  \*  \*

6. If the defendant knew, or should have known, that the manner in which it constructed and maintained its drainage system and leader would, and did, cause an obstruction in the public sidewalk, it was bound to take all reasonable steps calculated to avoid that result.

7. If the defendant so constructed or maintained a structure upon its premises as to cause an artificial discharge of water upon the sidewalk, which, by its freezing, made the use of the sidewalk dangerous, it is liable to the plaintiff, if, while he was rightfully on the sidewalk and exercising due care, he was injured as a result of the dangerous condition."

The Appellate Division, in affirming the judgment, held that the plaintiff's requested instructions Nos. 4, 6 and 7 were defective in that they omitted the principle of "reasonable use," and that "the basic principles governing the responsibility of an owner for the runoff of surface water from his land shall be the same whether the flowing water causes damage to the property of others or freezes on a public sidewalk and causes a pedestrian to fall," citing *Jessup v. Bamford Bros. Silk Mfg. Co.*, 66 *N. J. L.* 641 (*E. & A.* 1901). As to plaintiff's request No. 3, the court held that the trial judge's failure to charge, if error at all, was harmless because "[t]here was no issue in the case about plaintiff's fall having occurred on a public sidewalk where he had a right to be."

On plaintiff's appeal to this court he contends that the trial court's failure to charge the above requests constituted reversible error.

Prior to the decision in *Armstrong v. Francis Corp., supra,* our courts held that surface water is a "common enemy" which every landowner may fight and get rid of as best he may, and that "neither its retention, diversion, repulsion, or

altered transmission is an actionable injury, even though damage ensues." *Bowlsby v. Speer,* 31 *N. J. L.* 351, 353 (*Sup. Ct.* 1865) ; *Town of Union ads. Durkes,* 38 *N. J. L.* 21 (*Sup. Ct.* 1875). Both of the above cases involved the diversion of the natural flow of surface waters which was incidental to the development of the defendant's property, although the water so diverted caused damage to the property of an adjoining owner. In *Bowlsby,* the construction of a stable blocked the natural path of rain water down a hillside, and diverted it so that it ran onto the adjacent property of the plaintiff. In *Town of Union,* the ordinary construction of municipal streets changed the natural grade of the land so as to divert the path of surface waters onto the plaintiff's property.

An exception to the common enemy rule was that a landowner had no right to alter, by the construction of artificial conduits, the natural discharge of surface water from his land by conducting it in new channels in unusual quantities onto his neighbor's land, thereby causing damage. *West Orange v. Field,* 37 *N. J. Eq.* 600 (*E. & A.* 1883).

In the case of *Jessup v. Bamford Bros. Silk Mfg. Co., supra,* a significant change in direction was made in the development of surface water law in New Jersey. It was the first case to apply surface water law, which had evolved from disputes between adjacent landowners, to a situation where the diversion of surface water resulted in a dangerous obstruction on a public sidewalk. Moreover, the decision was the first to hold that a landowner was free of liability even where the diversion was accomplished through an artificial drainage system designed to control the flow of surface water. In that case, the owner of a lot sloping toward the street had constructed a building which rested upon a retaining wall in which "weep-holes" were made to permit the escape of surface water which had collected behind it. One of the openings was equipped with a drain pipe, apparently intended to enable the surface water to flow more readily through the opening. The plaintiff, a pedestrian, fell on

ice formed on the sidewalk from water which came through this drain pipe. The former Court of Errors and Appeals, in a seven to five decision, held that the defendant was not liable. The majority relied upon *Bowlsby v. Speer, supra; Town of Union ads. Durkes, supra,* and the Massachusetts case of *Gannon v. Hargadon,* 10 *Allen* 106, 87 *Am. Dec.* 625 (*Sup. Jud. Ct.* 1865), which they considered the leading case for the "common enemy" doctrine. The *Gannon* case, like the two New Jersey cases cited, also involved the incidental diversion of the natural flow of surface waters onto neighboring land, causing damage to it. The majority in *Jessup* said that if the land had been left unimproved, the same water would naturally have flowed in the same quantity upon the sidewalk. Regarding the concentration of the water by the retaining wall, the court said it was merely a "necessary incident of the legitimate beneficial user of its property by the defendant, and any injury arising therefrom is not actionable." *Id.,* at *pp.* 645–646.

The dissent in *Jessup* expressed the opinion that the case should have been submitted to the jury on the ground that the defendant, by collecting surface water and discharging it through an artificial conductor onto the public sidewalk where it was likely to freeze, thereby rendering the sidewalk more dangerous to travelers thereon, created a public nuisance. *Id.,* at *pp.* 647–648.

The ruling of the court in *Jessup* has been said to be the only case out of harmony with the doctrine prevailing in other jurisdictions. *Stephans v. Deickman,* 158 *Ky.* 337, 345, 164 *S. W.* 931, 934, 51 *L. R. A.* (*N. S.*) 309, 314 (*Ct. App.* 1914); Annotation, 58 *L. R. A.* 321, 328 (1903). Under this doctrine, a landowner has no right to collect surface water into a definite channel by a drain spout or similar artificial conductor and cause it to be discharged upon a public sidewalk where it is likely to freeze and make the use of the sidewalk dangerous. *Field v. Gowdy,* 199 *Mass.* 568, 85 *N. E.* 884, 19 *L. R. A.* (*N. S.*) 236 (*Sup. Jud. Ct.* 1908); *Isham v. Broderick,* 89 *Minn.* 397, 95 *N. W.* 224 (*Sup. Ct.*

1903); *Adlington v. Viroqua,* 155 *Wis.* 472, 144 *N. W.* 1130 (*Sup. Ct.* 1914); *Tremblay v. Harmony Mills,* 171 *N. Y.* 598, 64 *N. E.* 501 (*Sup. Ct.* 1902); *Kane v. New Idea Realty,* 104 *Conn.* 508, 133 *A.* 686 (*Sup. Ct. Err.* 1926); see *Kelley v. Park View Apartments,* 215 *Ore.* 198, 210, 330 *P. 2d* 1057, 1063 (1958); see also, Annotation: 34 *A. L. R.* 409 (1925); 25 *Am. Jur., Highways,* § 523; DeGraff, *Snow and Ice,* 21 *Cornell L. Q.* 436 (1936); *Restatement, Torts,* § 350, Comment (f).

In *Field v. Gowdy, supra,* the defendant owned a building abutting a public sidewalk. The water from its roof was collected by a spout and discharged on the defendant's private walk, whence it flowed in a definite channel down the natural slant to the public sidewalk and froze. The plaintiff, a pedestrian, slipped on the ice so formed and was injured. The Supreme Judicial Court of Massachusetts, in affirming a judgment for the plaintiff, said:

"A landowner has a right to change the surface of his lot, or improve it by the construction of buildings or by other means, in any lawful manner, and if the natural course of the surface water is thereby altered no liability is imposed on him. But he has no right to collect water into a definite channel by a spout or otherwise and pour it upon a public way. If he does this and through the operation of natural causes the water freezes, he is the efficient cause in the creation of a nuisance and is liable for whatever damage ensues as a probable consequence." 199 *Mass.* at *p.* 570, 85 *N. E.,* at *p.* 885, 19 *L. R. A.* (*N. S.*) at *p.* 237.

Many of the jurisdictions cited above have applied the common enemy rule to cases involving the competing interests of adjoining private landowners. However, they have not applied the rule to situations where an owner's disposition of surface waters creates a nuisance on a public sidewalk. Compare, *e. g., Gannon v. Hargadon, supra,* and *Field v. Gowdy, supra.* This is so because of the nature of the interests involved. Adjoining landowners each have an equal interest in the development and use of their property. When the common enemy rule was first evolved, the development

of unproductive land was considered to be of the highest importance to society, and to be encouraged without much regard to the particular effect of such development on the surrounding area. Each landowner was required to protect himself as best he could from the disposition of surface waters by his neighbor. See *Nathanson v. Wagner,* 118 *N. J. Eq.* 390 (*Ch.* 1935). While one landowner could divert the natural flow of surface waters onto adjacent properties more or less with impunity, the adjacent landowner had an equal right to keep them out, or to send them down the line to a third landowner.

On the other hand, members of the traveling public were not in a position to protect themselves against unnecessary dangers caused by the discharge of surface water onto the sidewalk by an abutting owner. Travelers were expected to endure the ordinary dangers created by natural conditions, including ice formed by the natural or incidental flow of surface water onto the public sidewalk. But, under the general rule mentioned above, a landowner had no right to create an unreasonably dangerous condition by the artificial accumulation and discharge of surface water onto the sidewalk by means of drain spouts or other conduits constructed for that purpose.

The common enemy doctrine, as applied in *Jessup* to a case involving injuries caused by ice upon a public sidewalk, was found by subsequent New Jersey cases to be too restrictive to afford adequate protection to the traveling public. Thus it was said that where a landowner undertakes to protect the public by constructing drains which would keep surface water off the sidewalk, he is held to have assumed the duty to maintain such drains in good condition, and is liable to persons injured because of his failure to do so. *Cavanagh v. Hoboken Land Improvement,* 93 *N. J. L.* 163 (*E. & A.* 1919); *Zwickl v. Broadway Theatre Co.,* 103 *N. J. L.* 604 (*E. & A.* 1927); *Millar v. United Advertising Corp.,* 131 *N. J. L.* 209 (*E. & A.* 1944); *cf. War v. Mazzarella,* 137 *N. J. L.* 736 (*E. & A.* 1948). However, it was

apparent that this rule was insufficient because it was also held that the duty, having been voluntarily assumed, could be abandoned by the landowner so long as adequate notice of the abandonment was given. *Cavanagh v. Hoboken Land Improvement, supra.* As a consequence, in *Saco v. Hall,* 1 *N. J.* 377 (1949), in which the plaintiff had notice of the abandonment, it was held that where a landowner constructs a system of drain pipes or leaders which encroaches upon the public sidewalk, a duty is imposed upon him by law to construct and maintain it so as not to create a public nuisance. Hence, since no assumption of duty is involved, the question of abandonment would not arise and the cases to the contrary were expressly overruled.

In *Armstrong v. Francis Corp., supra,* an action involving the disposition of surface waters by one landowner onto the property of another, a major change in the substantive law governing the liability of a landowner was made. In that case, the defendant, a real estate developer, constructed a system of storm sewers and drains which were made to empty into a pre-existing natural brook. The substantial increase in the volume and velocity of the water in the brook caused extensive silting, flooding and soil erosion of the neighboring property through which the brook traveled after leaving the defendant's land. After a thorough review of authorities throughout the country concerning the adjustment of the relative interests of adjacent landowners in the disposition of surface waters, this court rejected the "common enemy" doctrine and declared its adherence to the "reasonable use" rule. While the "common enemy" doctrine evaluated the right of parties in terms of property law, a possessor's liability for harm caused by the repulsion of surface waters is now viewed as a tort liability. See Kinyon and McClure, "Interferences With Surface Waters," 24 *Minn. L. Rev.* 891, 936–939 (1940). This places a landowner's liability for the disposition of surface waters on the same footing as his liability generally for the use of land in other ways which causes harmful interference with a neighbor's use of his own

property. As stated by *Harper & James, Torts,* § 1.24, *p.* 71 (1956), the basic proposition is:

"Every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor."

Thus the court in *Armstrong* declared:

"The casting of surface waters from one's own land upon the land of another, in circumstances where the resultant material harm to the other was foreseen or foreseeable, would appear on the face of it to be tortious conduct, as actionable where the consequences of an unreasonable use of the possessor's land   *   *   *   [causes] harm." 20 *N. J.* at *pp.* 326-327.

By its rejection of the "common enemy" doctrine, the court in *Armstrong* destroyed the very foundation of the *Jessup* case, as well as all other New Jersey decisions which had adhered to that doctrine. Moreover, the second aspect of the *Jessup* case, that surface water law as a branch of property law was applicable to icy sidewalk cases, was equally affected by *Armstrong.* Under *Armstrong,* there is no longer any special "surface water law," but rather liability for all of the various harms which a landowner might cause to others by his disposition of surface waters is to be governed by applicable tort principles. In the area of interference with a neighboring landowner, the "reasonable use" rule will apply. See *Armstrong* at *p.* 330, citing *Restatement, Torts,* § 833 (liability for the diversion of surface waters onto neighboring property governed by the general rules concerning interference with the use of land). But this rule is inapposite to a situation where the landowner, through the use of his property, creates an unreasonable risk of harm to travelers on an abutting public sidewalk. In recognizing this distinction, the *Restatement* declares that an abutting landowner is under a duty to exercise reasonable care to maintain in a reasonably safe condition any structure or other artificial condition which he created in the pub-

lic highway. *Restatement, Torts,* § 350. And under this rule, "artificial condition" includes "water discharged from * * * eaves [of the possessor's building] by standpipes and subsequently freezing into ice." *Id.,* Comment: (f). Our courts have long held that:

"* * * any obstruction unnecessarily incommoding or impeding the lawful use of a street by the public is a nuisance for which, upon the happening of an accident as a result thereof, the creator of the nuisance must respond in damages." *Christine v. Mutual Grocery Co.,* 119 *N. J. L.* 149, 152 (*E. & A.* 1937), and cases cited therein.

See *Saco v. Hall, supra,* where this court also said:

"The ownership in land over which a street has been laid is, for all substantial purposes, in the public, although the owner retains the naked fee to the middle of the street, which on the assertion of the public right is divested of all beneficial interest. The right of the public to use it for safe and public travel is the primary and superior right.

\*          \*          \*          \*          \*          \*          \*          \*

"The traveling public has the right to assume that there is no dangerous impediment or pitfall in any part of it." *Id.,* at *p.* 382.

In *Christine,* a large bag of salt left on a public sidewalk was held to be a nuisance. In *Saco,* a defective drain pipe which overhung the sidewalk and leaked water onto it, causing the formation of ice, was also held to constitute a nuisance. We see no distinction between the dangerous sidewalk obstructions in those cases and the obstruction caused by the ice in the present case. All represent an equally unreasonable risk of harm to pedestrians. As was said in *Hynes v. Brewer,* 194 *Mass.* 435, 439, 80 *N. E.* 503, 9 *L. R. A.* (*N. S.*) 598, 600 (*Sup. Jud. Ct.* 1907):

"[A] landowner cannot, without being liable therefore, erect such buildings or structures upon his own land as will create a public nuisance in a highway. He has not the right to collect surface water into an artificial channel and thus to discharge it upon the highway."

■■ It follows from the above discussion that the "reasonable use" rule is a tort principle which is applicable to

disputes between neighboring landowners. But where, as here, the action is between a landowner and a pedestrian who suffers injury through an obstruction of the public sidewalk, the general principles of negligence law must be applied. Therefore, we hold that if a landowner constructs or maintains drain pipes, leaders or similar artificial conduits of surface water in such a manner that the water thus collected is so discharged that it reaches the public sidewalk and there freezes, making the sidewalk dangerous to travelers, then he is chargeable with negligently creating an unreasonable risk of injury. And if as a proximate result of such risk a traveler, while rightfully upon the sidewalk and exercising due care, suffers injury, the landowner is liable.

In the present case, the uncontroverted proof shows that the defendant's leader was constructed in such a manner that water from it was discharged in mid-air and ran across the sidewalk and froze. The potential for injury and the lack of due care by the defendant in these circumstances are such that reasonable men could not disagree that the defendant was negligent in the construction and maintenance of its leader system. Therefore, the jury should have been instructed that the defendant was liable if they found that its negligence was the proximate cause of the plaintiff's injury, and that he was not contributorily negligent.

In view of the disposition which we have made of the legal issues involved in this case, the propriety of the trial court's refusal to charge the plaintiff's requested instructions becomes moot. All of the requests relate to the question of the defendant's negligence, which we have said is established as a matter of law. However, the plaintiff's requests did serve to bring to the trial court's attention both the inapplicability of the "reasonable use" test, and the relevance of general negligence principles.. See *State v. Clawans,* 38 *N. J.* 162, 174–175 (1962). It is clear to us that the legal position which the plaintiff endeavored to assert through his requested instructions is in accord with this opinion.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for a new trial.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.