123 N.J. Super. 26 (1973)
301 A.2d 451
ROBERT KNAPP, III, AN INFANT, BY HIS GUARDIAN AD LITEM, ROBERT KNAPP, JR., COLEEN KNAPP, ETC., GAYLE KNAPP, ETC., ROBERT KNAPP, JUNE KNAPP, INDIVIDUALLY AND AS ADMINISTRATOR AD PROS. AND GENERAL ADMINISTRATOR OF THE ESTATE OF DONNA KNAPP, AND GEORGE BEAL AND DORIS BEAL, PLAINTIFFS-RESPONDENTS,
v.
PHILLIPS PETROLEUM COMPANY, A DELAWARE CORPORATION, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT, AND GEORGE R. WISSING, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1973.
Decided March 5, 1973.
*28 Before Judges FRITZ, LYNCH and MARTINO.
Mr. Robert V. Carton argued the cause for appellant (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
Mr. Thomas T. Warshaw argued the cause for respondents Knapp (Messrs. Drazin, Warshaw, Auerbach and Rudnick, attorneys).
*29 Mr. Michael D. Schottland argued the cause for respondents Beal (Messrs. Chamlin and Schottland, attorney).
The opinion of the court was delivered by LYNCH, J.A.D.
Defendant Phillips Petroleum Company (Phillips) appeals from judgments against it pursuant to jury verdicts in favor of the several plaintiffs who were injured in an automobile accident which occurred on Route 34 in Madison Township on April 10, 1969. The verdicts were also against defendant Wissing. He does not appeal.
The accident occurred at a point in the roadway of Route 34 opposite the driveway of a gasoline service station owned by Phillips. Defendant Wissing was driving his car south on Route 34 when he observed what appeared to be a "pot hole" in his lane (the lane nearest the center of the highway). Thinking his left front wheel might hit the hole, he swerved to his left to avoid it. It was raining and, as he turned, the front of his car went into the northbound lane, began to skid across the center line and was struck in the right side by a northbound car owned and operated by plaintiff Robert Knapp, Jr. Passengers in the Knapp vehicle were his wife June, his children Gayle, Coleen, Robert, III and Donna, and also plaintiffs George Beal and his wife Doris. All were injured, Donna Knapp dying as a result of the injuries she sustained. Damages were assessed as follows: George Beal, $5,000; Doris Beal, $20,000; Robert Knapp, Jr., $75,000; Gayle Knapp, $40,000; Coleen Knapp, $2,500; Robert Knapp, III, $1,000; June Knapp, $175,000. On the claim because of Donna Knapp's death, $20,000 was awarded, and for her pain and suffering the verdict was in the amount of $4,000.
The essence of plaintiffs' claim against Phillips was that the construction of the gas station, and particularly of a "French" drain beneath the driveway thereof, did cause (as stated in Knapps' brief) "a casting of waters in an *30 increased amount onto or under the highway in such a manner as to create or cause the condition which ultimately created the hole in Highway 34, causing the subsequent series of events." This conduct on the part of Phillips is said to have been a proximate cause of the accident.
Several experts, William Poznak for plaintiff, Wallace V. Smith and Russell H. Benjamin on behalf of defendants, were in substantial agreement as to the cause of the condition of Route 34 in the area in question. In general, they agreed that underground springs coming from the Phillips property weakened the subsurface of the road, contributing to the general breaking up of the highway in the area in question.
The differences among the experts, however, rested in their diverse opinions as to the functioning of the French drain and its relationship to the breaking up of the highway. Mr. Poznak, for plaintiffs, testified that French drains are "inefficient." Asked what part the French drain in its location played in the "breaking up underneath the roadway so this hole developed," he answered that it tended to accumulate subsurface water and in this instance brought it closer to the highway and "this proximity of the water being drawn down here would then go under the road." Messrs. Benjamin and Smith, for defendants, while conceding that subsurface water coming from the Phillips property contributed to the breaking up of the highway, testified that the French drain was a proper and acceptable means of attempting to intercept the subsurface water, whereby less of such water reached the base of the highway than would have had the French drain not been built.
Defendant Phillips contends on appeal that (a) it had no legal duty which was violated; (b) "the hole" in the road could not have been a proximate cause of the accident; (c) nothing that Phillips did or did not do, was a proximate cause of the hole; (d) the verdict of the jury was against the weight of the evidence and the result of bias, passion, prejudice and/or sympathy; (e) the court erred *31 in its charge and in refusing defendant Phillips' request to charge; and (f) the verdicts were excessive.
The main thrust of Phillips' argument is that the court erred in denying its motions for involuntary dismissal, in denying its motions for judgment n.o.v. and for a new trial, and in submitting the issues to the jury.
On such motions the court must accept as true all the evidence which supports the position of the party defending against the motion and accord him the benefit of all inferences which can reasonably and legitimately be deduced therefrom. If reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2, 5 (1969); Bozza v. Vornado, 42 N.J. 355, 357-358 (1964); Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964); Franklin Discount Co. v. Ford, 27 N.J. 473, 490 (1958). Those inferences drawn are to be taken from established facts and may not be based upon a foundation of pure conjecture, speculation, surmise or guess. Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123, 133 (App. Div. 1966). The judicial function therefore is a mechanical one. The trial court is not concerned with the worth, nature or extent of the evidence, but only with its existence. Dolson, supra, 55 N.J. at 6. As the trial court is bound by these standards below, so too are we on appeal. Harr v. Allstate Insur. Co., 54 N.J. 287, 292 (1969).
Defendant contends that the hole which plaintiffs claimed was the one which caused defendant Wissing to swerve his car was not the particular hole identified by Wissing at trial. Phillips contends that no one saw that particular hole on the night of the accident, that it was only identified by police officer Boss on the day after the accident and after Wissing, while in the hospital, described its location to him. Defendant points out that the dimensions of the hole were those of a rectangle  two feet long, seven inches wide and six inches deep. Such regular dimensions, it is argued, are not those of a "pot hole" caused by subsurface damaging influences, but rather was "manmade." *32 It is further said that there was evidence that the hole which caused Wissing to swerve was a considerable distance north of the scene of the accident. However, Wissing, though at first showing some hesitation, did circle the hole on Exhibit PK13, identifying it as the hole which caused him to swerve. Officer Boss said that while it was rectangular in shape it was "not a perfect rectangle." Thus, defendant's arguments as to the identity of the offending hole create only issues of fact. They were for the jury to resolve. Apparently it did so, in favor of plaintiffs. And, since there was sufficient credible evidence to support the finding, we may not differ.
Defendant contends that the controlling legal doctrine as to subsurface waters is that of "reasonable use," as applied in Meeker v. East Orange, 77 N.J.L. 623, 638 (E. & A. 1909). We hold to the contrary. The "reasonable use" doctrine was repudiated by our Supreme Court in Gellenthin v. J. & D., Inc., 38 N.J. 341 (1962), insofar as it may apply to a situation where a landowner creates an unreasonable risk of harm to travelers on a public sidewalk or other parts of a public highway. The court retained the "reasonable use" rule only as between neighboring landowners. Justice Proctor, speaking for the court, said:
It follows from the above discussion that the "reasonable use" rule is a tort principle which is applicable to disputes between neighboring landowners. But where, as here, the action is between a landowner and a pedestrian who suffers injury through an obstruction of the public sidewalk, the general principles of negligence law must be applied. Therefore, we hold that if a landowner constructs or maintains drain pipes, leaders or similar artificial conduits of surface water in such a manner that the water thus collected is so discharged that it reaches the public sidewalk and there freezes, making the sidewalk dangerous to travelers, then he is chargeable with negligently creating an unreasonable risk of injury. And if as a proximate result of such risk a traveler, while rightfully upon the sidewalk and exercising due care, suffers injury, the landowner is liable. [at 352-353]
While Gellenthin involved a nuisance on a public sidewalk, it is clear that the opinion regarded the sidewalk *33 as part of the public highway and that the stated rule would equally apply to a nuisance or dangerous condition created in any part of the highway. We also recognize that Gellenthin referred to surface waters whereas here we are dealing with subsurface waters. Counsel for defendant sees no relevant distinction and neither do we. We therefore hold that the rule enunciated in Gellenthin is applicable here, and the "reasonable use" rule is not appropriate.
Defendant next contends that there was no evidence of negligence on its part. Again the applicable rule is given to us in Gellenthin, i e., that if a landowner constructs or maintains "drain pipes * * * or similar artificial conduits of surface [sic] water in such a manner that the water thus collected is so discharged that it reaches the public sidewalk * * * making the sidewalk dangerous to travelers, then he is chargeable with negligently creating an unreasonable risk of injury * * *." Gellenthin at 353; emphasis added. As we have said above, and as Gellenthin recognizes, the rule is applicable to any part of the public highway or street. See Gellenthin at 352, and its citations of Christine v. Mutual Grocery Co., 119 N.J.L. 149, 152 (E. & A. 1937), and Saco v. Hall, 1 N.J. 377 (1949), referring to the public's right to use the "street" for safe travel. Likewise it applies, as we hold, to subsurface waters as well as to surface waters.
The French drain here involved consisted of an underground trench filled with stone and gravel. There were six inches of gravel on top of the drain. In this case the drain ran down the slope of the driveway on defendant's property to a point within three feet of the curb, running along Route 34, at which point it was directed in a general northerly direction parallel to the roadway, and ultimately was to lead to a culvert into which the water was to empty.
Plaintiffs' expert, Posnak, a civil engineer, qualified from experience to testify concerning drainage methods, testified that a French drain is a "very poor system" for removing *34 water, that it is "not efficient," that "they" are not "generally accepted" and "they're not being used." He opined that they have a tendency to clog and "once they begin to clog they lose all their use." The gravel on top of the drain will absorb the water "that is being diverted by the French drain and the area will begin to swell. The water will start to follow a downward course toward the curb." Finally Posnak was asked "what part the French drain in its location played in the breaking up underneath the roadway so this hole developed?" His answer was:
From looking at the drawings here the French drain is right adjacent to the curb line, runs parallel to it, and the French drain, the purpose of the French drain is to bring water to it and then out to the ditch. Now, it accumulated the water within the French drain bringing it closer to the roadbed and this proximity of the water being drawn here would then go under the road. As evidenced by my pictures showing the water coming out of the curb line in the area of the French drain.
Photographs taken at the scene the day after the accident demonstrated a collection of water in front of defendant's property at the joint between the curb and the roadway. The top of the curb was dry, and the testimony was that the water had been "subsurface" water coming from the property.
We hold that the foregoing proofs were sufficient to create a jury issue as to whether the French drain constructed by defendant had collected the subsurface water and diverted it to the highway, making it dangerous to travelers thereon. If so, defendant was "chargeable with negligently creating an unreasonable risk of injury." Gellenthin v. J. & D., Inc., supra, 38 N.J. at 353.
The question of proximate cause was likewise for the jury. Therefore defendant's motion for involuntary dismissal was properly denied. We likewise hold that the verdicts were not against the weight of the evidence. To hold otherwise would be an improper usurpation of the jury's function.
*35 In addition, defendant contends that the court erred in several aspects of its charge, excerpted from context, and in denying certain of defendant's requests to charge. Viewing the charge as a whole and in context, we find defendant's criticism of the charge, and the court's refusal to grant defendant's requests, to be without merit.
Lastly it is contended that the verdicts in favor of the plaintiffs were excessive. We have considered the extent of the injuries, the special damages and also the proofs with respect to the death claim as to Donna Knapp. While generous, they are not excessive so as to evidence bias, mistake, passion, prejudice or sympathy.
The judgments in favor of plaintiffs are affirmed.