JEAN FERRIE AND ROBERT B. FERRIE, PLAINTIFFS-RE-
SPONDENTS, v. MICHAEL D'ARC, DEFENDANT-APPEL-
LANT.

Argued October 13, 1959—Decided November 9, 1959.

*Mr. Joseph M. Thuring* argued the cause for plaintiffs-respondents (*Messrs. Salvest & Thuring,* attorneys).

*Mr. Edward E. Kuebler* argued the cause for defendant-appellant.

The opinion of the Court was delivered by

FRANCIS, J.   The only issue presented for determination in this case is the plaintiff's contributory negligence.   Defendant claims that recovery is barred on that ground as a matter of law.   Plaintiff argues that a factual issue is presented by the evidence.   The trial court held that the matter was for resolution by the jury.   A verdict for the plaintiff was returned and the Appellate Division sustained

it. *55 N. J. Super.* 65 (1959). We granted certification. *29 N. J.* 587 (1959).

The plaintiffs, Jean Ferrie, aged 69 years, and her husband, Robert B. Ferrie, had lived in a one-family house on Brighton Avenue, Kearny, New Jersey, for about 11 years. Ownership was in the husband. A frame stoop was attached to the rear of the house at the kitchen exit. It consisted of a small platform, about 38 inches above ground level, connected with five steps leading to the back lawn. A wooden rail ran along its side about 30 inches above the platform. The stoop was in poor condition and on April 14, 1956 plaintiffs engaged defendant, a carpenter builder, to demolish it and construct a new one. The work called for steps, platform and railings of the same size and type as the old ones.

A few days later, on April 17, defendant's workmen removed the structure and by the end of the first day had almost completed rebuilding the new porch. Steps and platform had been constructed; the side railings remained to be installed. During the progress of the work a barrier was nailed over the kitchen door so that it could not be used as a means of exit. Before the carpenters left, the barrier was removed. Defendant asserted this was done at the request of Mrs. Ferrie who said her husband always entered the house by the rear door in returning from his daily employment. She denied the statement but admits unqualifiedly that at the end of the day she discussed the progress of the construction with defendant, knew that the kitchen door was no longer barred, observed the state of completion of the porch, and became fully aware that the railings had not been replaced. She testified also that when her husband returned home and entered the house by means of the porch and the kitchen door, they talked over the fact that everything was complete except the railings.

The following day, April 18, 1956, defendant's men did not return. According to the testimony, they were engaged in some other work.

Plaintiffs kept a pet dog which had been in their household for eight years. It was Mrs. Ferrie's daily practice after meals to take the bones and remaining scraps of food out on the back stoop and throw them to the dog. As she threw, she would lean against the rail and bend forward.

April 18 was a clear, bright, early spring day. Just before lunch Mrs. Ferrie let the dog out into the back yard through the kitchen door. At this time she noticed again the condition of the porch and that the railing was not there. Shortly after lunch, at about 1 P. M., she took the food scraps and bones from the table and went out on the platform. The dog was about five feet from the porch. She stepped near the edge—how close, she could not say—leaned forward in the act of throwing the bones, and fell to the ground because "there was no rail there." The only explanation offered for the fall was that she had forgotten that the railing was not in place.

■ It is a commonplace of the law that she was required to exercise the degree of care and vigilance for her own safety that a reasonably prudent person possessed of the same knowledge of existing danger would exercise under the circumstances and conditions which confronted her. And, in this connection, it must be assumed that her memory was equal to that of a reasonable person, that is, one sufficiently retentive to hold that present realization of past impressions which was essential to her safety. *Restatement, Torts* (1934) § 289(*f*); 2 *Harper and James, Law of Torts* (1956) § 16.5.

■■ When an injury results from forgetfulness or inattention to a known danger, the obvious contributory negligence is not excusable in the absence of some condition or circumstance which would divert the mind or attention of an ordinarily prudent man. Mere lapse of memory, or inattention or mental abstraction at the critical moment cannot be considered an adequate diversion. One who is inattentive to or forgetful of a known and obvious condition which contains a risk of injury is guilty of contributory negligence as a matter of law, unless some diversion of the

type referred to above is shown to have existed at the time. *Jacobs v. Southern R. Co.*, 241 *U. S.* 229, 36 *S. Ct.* 588, 60 *L. Ed.* 970 (1916); *City of Birmingham v. Edwards*, 201 *Ala.* 251, 77 *So.* 841 (1918); *Black v. American Mut. Liability Ins. Co.*, 37 *So.* 2d 63 (*La. Ct. App.* 1948); *Horvath v. Morrison*, 344 *Pa.* 434, 25 *A.* 2d 324 (*Sup. Ct.* 1942); *Wessner v. Blue Ridge Transp. Co.*, 338 *Pa.* 161, 12 *A.* 2d 559 (*Sup. Ct.* 1940); *Mayor & Aldermen of Knoxville v. Cain*, 128 *Tenn.* 250, 159 *S. W.* 1084 (*Sup. Ct.* 1913); *Hill v. City of Richmond*, 189 *Va.* 576, 53 *S. E.* 2d 810 (*Sup. Ct. App.* 1949).

In *Mayor & Aldermen of Knoxville v. Cain, supra,* the plaintiff fell over certain obstructions in a public way. He knew of their presence, having passed along the walk every day for two or three weeks while they were there. When asked why he fell over them, he said he just temporarily forgot them. In holding that contributory negligence appeared as a matter of law, the court said:

"He knew the danger, but did not keep it in mind. Was his forgetfulness an excuse?" 159 *S. W.* at *page* 1085.

After pointing out that if a pedestrian's attention is called away from the danger by any cause adequate to effect that result, he might be excused, the opinion continued:

"* * * but we do not see how one can be excused who admits that there was nothing to divert his attention, that he simply forgot— that is, that he failed to pay attention to his going. Therefore, while it is true * * * that the mere fact of a temporary lapse of memory in presence of a known danger is not always proof of negligence, yet we think this must be understood with the qualification above indicated; that is, that such lapse must be shown to have reasonable cause, one which is apart from mere inattention. The duty of every one in presence of a known danger is to give heed, and to walk with care; yet the law recognizes the truth that men are imperfect, that few have adequate command of their faculties, emotions, and propensities, and the power of steady attention, and that most are easily moved from the due balance of mental composure. So * * * the exceptions we have mentioned, and others like them, are tolerated out of tenderness to the weakness of human nature. But we do not think we should go to the length of holding

that every lapse of memory is excusable. Such a rule would breed fraud, and put an end to the responsibility of plaintiffs for the exercise of due care, or at least render impossible the enforcement of it when interest prompts deception and weakness yields to it." 159 *S. W.* at *page* 1086.

A similar comment appears in *Wessner v. Blue Ridge Transp. Co., supra,* where the Supreme Court of Pennsylvania adopted the following language of the lower court:

"It does not seem to me that, in circumstances of ordinary discomfort, the obligation to give heed and to walk with care places too great a burden on the human mind. It is true, of course, that momentary forgetfulness may be excusable in sudden emergencies or stress of peril, when reasonable cause for such lapse can be shown, apart from mere inattention. But we cannot go to the length of holding that Mrs. Wessner's uneasiness furnished any adequately disturbing cause for her forgetfulness. No extraordinary situation confronted her; her faculties were not in any way impaired. The result cannot be foreseen if it be admitted that mere inattention or lapse of memory can excuse negligence. Such a rule would invalidate all sense perceptions, and would effectively put an end to the law of contributory negligence in the practical administration of justice. Though we may regard with amused tolerance the proverbial abstractions of middle age hunting for the thimble on its finger or the pen in its mouth, and of old age troubled that it cannot find the glasses on its nose, absentmindedness is not a satisfactory standard of care in the modern world." 12 *A.* 2*d* at *pages* 560–561.

In the present instance, the evidence reveals no reasonable excuse for plaintiff's forgetfulness or inattention at the critical moment when she undertook to throw the bones to the dog. The absence of the railing was well known to her from conversation with defendant and with her husband, as well as from personal observation. And within an hour of the fall by actual observation her recollection that it had not been replaced was refreshed. Her habit of leaning on the rail when feeding the dog is no excuse in these circumstances for her failure to remember the presence of the known and obvious danger. In our judgment, such forgetfulness of, or mental abstraction with regard to, the obvious danger as a matter of law brought her conduct below that of a reasonably prudent person and bars recovery.

The verdict for the plaintiff is reversed and the cause is remanded for the entry of judgment in favor of the defendant.

Mr. Chief Justice WEINTRAUB and Mr. Justice JACOBS vote to affirm for the reasons expressed in the opinion of Judge Freund in the court below.

*For reversal*—Justices BURLING, FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For affirmance*—Chief Justice WEINTRAUB, and Justice JACOBS—2.