103 N.J. Super. 456 (1968)
247 A.2d 678
SALVATORE PIRO, PLAINTIFF-RESPONDENT,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1968.
Decided February 2, 1968.
*458 Before Judges KILKENNY, CARTON and ROSEN.
Mr. James P. Beggans argued the cause for appellant (Messrs. Beggans & Keale, attorneys; Mr. Geoffrey Gaulkin, of counsel).
Mr. Arthur N. D'Italia argued the cause for respondent (Messrs. Warren, Chasan, Leyner & Holland, attorneys).
PER CURIAM.
Defendant Public Service Electric and Gas Company appeals from a judgment after a jury verdict in *459 favor of plaintiff Piro for the recovery of damages for personal injuries. Plaintiff was injured when he was struck by a piece of wood thrown due to a sawing operation conducted by plaintiff's employer, United Engineers and Constructors, Inc., at premises owned by Public Service.
Plaintiff alleged that this defendant was negligent in failing to provide a saw equipped with proper mechanical safety devices and failing to provide a safe place in which to work. Charges of breach of warranty against Public Service and DeWalt, Inc., the manufacturer of the electric saw, and an additional charge of negligence against DeWalt were dismissed at the conclusion of plaintiff's cases and the trial proceeded against Public Service on the single issue of negligence.
There is no dispute as to the fact of the accident, nor any essential dispute as to the manner in which it occurred. The sole issue relates to the legal responsibility of Public Service for the injuries sustained by plaintiff.
On March 21, 1963, plaintiff, while an employee of United, was struck on the left arm by a piece of wood thrown or ejected by an electric saw operated by plaintiff's co-employee. Public Service had engaged plaintiff's employer, United, under a written contract, "to act as (defendant's) construction department in the construction of an electric generating plant." Public Service conceded that it had supplied both the saw and the premises for the use of United in performing the construction contract.
The structure in which the accident occurred was a converted ferryboat which had been brought to the job site for the use of United in constructing the generating plant. The interior of this structure was divided into a number of different shops, one of which was a carpentry shop, equipped with a bench and an electric saw known as a "DeWalt 7-horse-power saw." The saw, which had a 16-inch blade, was described by Erbe, the man who operated it, as a "big saw, out of the ordinary for a mill." He said it had a metal table *460 covered with wood. The whole table with the saw included was 40 to 50 feet in length.
On the day in question, Erbe, working for United, was ripping a 3-inch strip from a plywood board some 8 feet long and 2 feet wide and 5/8 inches thick. Working with him was an apprentice whose function was to catch the 3-inch strips as they came through the saw. The apprentice was supposed to jab the strips with a block of wood. While doing so, the apprentice said the teeth on the blade grabbed the wood and threw it back toward plaintiff.
At the time the accident happened, it was not disputed that the saw did not have on it an anti-kickback device. This device was described as resembling a "fifth hand," which drops down on the wood being cut and, by the application of pressure, prevents it from being thrown back by the action of the saw blade. Such a device is required to be provided according to the regulations of the New Jersey Bureau of Engineering and Safety on all hand-set circular saws and on radial saws (such as the saw in question) when used for ripping. Public Service had purchased this device along with the saw in 1956 but the anti-kickback device was not on the saw on the day of the accident. Plaintiff's proof established that it had not been removed by the operator of the saw since the time he began his employment in December of 1962.
Defendant did not dispute that there was no "spreader" on the saw as required by the regulation of the Department of Labor and Industry. The spreader is a device "used to prevent the wood from coming back on the saw."
Nor was there any dispute that the hurling of the wood which injured plaintiff resulted from a "kickback." Testimony presented by experts on behalf of plaintiff was to the effect that the presence of the anti-kickback device would have prevented the accident from occurring.
The converted ferryboat, owned and supplied by the defendant Public Service, had been in its possession for some *461 years and had been used in other projects, including the construction of a generating station at Sewaren. Public Service had moved the ferryboat from the Sewaren project to its premises at Jersey City where the new generating station was to be erected and had filled in earth around the ferryboat structure, burying it in the ground.
Plaintiff also charges that these premises where the accident occurred were unsafe in that there was no barricade around the DeWalt saw to protect persons in the vicinity from flying pieces of wood. Plaintiff's proofs established that ripping saws were required by the Bureau of Engineering and Safety to be located so that no employee worked in line with the saw where he may be hit by material in case of a kickback. The regulation also provided that "if it is necessary to locate a machine in such a position, a heavy metal or plank barricade should be erected to protect the workmen." Public Service conceded that no such barrier existed at the time of the accident and there was testimony from plaintiff's experts that safe and proper use of the saw in question would require that such a protective barrier be constructed.
On this appeal defendant's principal contention is that plaintiff's proof failed to establish any basis for imposing upon it liability for plaintiff's injuries.
As to the condition of the saw itself, there was proof that the anti-kickback device was not on the saw on the date of the accident and had not been removed by the operator of the saw since he began his employment at the premises in December of 1962. There was proof also that the device known as a "spreader" was not purchased as a component of the saw it supplied to plaintiff's employer in 1956 and that it was not attached to the saw on the date of the accident. Defendant points to the fact that the spreader and the anti-kickback device were removable, although intended to be in place at all times, and that in the operation of the saw it was necessary to make frequent adjustments. Since these devices are not used for cross-cutting and must be adjusted to the thickness *462 of the material being ripped, defendant argues that the evidence is susceptible of the inference that the operator may have removed the devices altogether. However, the existence of such a possibility does not serve to relieve this defendant of responsibility.
Whether or not defendant was responsible for the absence of these safety attachments at the time of the accident, the evidence certainly justified the jury in concluding that the place where plaintiff was employed was not equipped with adequate safeguards to protect him from injury. It was conceded that the metal or plank barricade around the saw was not provided as required by the Bureau of Engineering and Safety. The presence of a barricade would not prevent the kickback, but would prevent injury to the workmen if a kickback occurred. The requirement of a barricade was designed to protect the workmen from the occurrence of kickback whether they resulted from the operator's practice of removing the devices or from some other cause. There was affirmative testimony in the record that the injury would not have occurred had such barricade existed at the end of the saw bench.
Accordingly, there was ample evidence from which the jury could find that defendant's premises were unsafe. Defendant argues nevertheless that it cannot be held responsible. Defendant's brief states its contention as follows:
"This defendant's position in this court is simply this: that even if the conditions complained of were, in fact, unsafe and evidenced negligence, nevertheless, the proofs here do not justify under applicable law, the allocation of responsibility to Public Service for those conditions or for the resultant injuries which plaintiff sustained. * * *"
We view this contention as untenable.
Defendant does not appear to question the sufficiency of the facts presented to the jury to warrant its conclusion that either the saw itself or the workshop, or both, were inadequately safeguarded. In view of the testimony presented, *463 such an attack could hardly be successfully made. Rather, defendant maintains that despite the unsafe conditions in its premises and the unsafe instrument it supplied, plaintiff's failure to prove that defendant exercised control over the operations of United precludes recovery.
Defendant's concept that a showing of control over United's operations is prerequisite to recovery is erroneous. This is not a case in which plaintiff seeks to hold defendant responsible for injuries caused by the negligence of an independent contractor in the performance of its operations, but for defendant's own failure to fulfill the duty cast on it as a landowner to provide a safe place of employment for the contractor's employees.
That defendant had a legal duty to provide a reasonably safe place for plaintiff to perform his work as a business invitee cannot now be questioned. A landowner, "who by invitation, express or implied, induces persons to come upon the premises, is under a duty to exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation." Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83, 86 (E. & A. 1932). See also Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219 (1954). As the employee of an independent contractor, plaintiff was an invitee to whom defendant owed such a duty. See Zentz v. Toop, 92 N.J. Super. 105, 111 (App. Div. 1966); Bergquist v. Penterman, 46 N.J. Super. 74, 83 (App. Div. 1957).
The duty of a landowner to such an invitee is non-delegable. Defendant cannot escape its responsibility to provide a safe place to work by attempting to transfer it to another. See Hussey v. Long Dock R. Co., 100 N.J.L. 380, 384 (E. & A. 1924). The possibility that another may also have been negligent does not relieve it of its legal duty.
Contrary to defendant's contention, control over or supervisory authority of the actions of the independent contractor is obviously not relevant in such cases because it is the *464 negligence of the landowner himself that is the basis for imposing liability.
Defendant misconceives the gravamen of plaintiff's cause of action. The complaint alleges, inter alia, that defendant was negligent in failing to provide plaintiff with a safe place to work. The pretrial order repeats this charge. The case was tried on this basis.
The trial judge's instructions to the jury and counsel's argument on motions made at the conclusion of defendant's case make it clear that plaintiff was not asserting liability on the basis of the doctrine of respondeat superior. On the contrary, as stated by the trial judge and agreed by plaintiff's attorney, the theory of plaintiff's case was defendant's "failure to provide a reasonably safe place for the plaintiff to perform his work as a business invitee of Public Service."
Because of defendant's misconception, many of the authorities it relies upon are inapposite. In Marion v. Public Sevice Elec. & Gas Co., 72 N.J. Super. 146 (App. Div. 1962), plaintiff brought suit against Public Service as the employer of several independent contractors for injuries sustained as the result of the contractor's negligence. Since the theory of Public Service's liability in that case was predicated upon the doctrine of respondeat superior, the court embarked upon an analysis of the relationship between Public Service and its independent contractors. It was found that absent Public Service's control over the work of its independent contractors, there could be no liability for the negligence of the contractor. See 72 N.J. Super., at pp. 153-55.
Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425 (1959), Meny v. Carlson, 6 N.J. 82 (1950), and Wolczak v. National Electric Products Corp., 66 N.J. Super. 64 (App. Div. 1961), also relied upon by defendant to establish the necessity for showing defendant's control of its independent contractor's work, are equally inapposite. All involved attempts to impose vicarious liability for the negligence of an independent contractor.
*465 Nor was there error committed by the trial court in refusing to instruct the jury that it was necessary for the plaintiff to prove that Public Service exercised control of the premises where the accident happened. Since control was not properly in issue in the setting of this case, except insofar as it related to defendant's admitted ownership of the premises, it follows that the trial judge's refusal to charge that element as requested by defendant was proper.
There is likewise no merit to defendant's contention that the trial judge failed to give sufficient instructions to enable the jury to reach an intelligent verdict. The case was properly submitted to the jury on the issue of defendant's negligence. The trial judge's charge contained all the essential instructions, including notice, foreseeability, proximate cause, reasonable care and the duty of providing a safe place to work. Here again, defendant's claim that the instructions were inadequate seems to be predicated upon its misconception that the charge of negligence was based upon its control of the premises rather than its failure to provide a safe place for plaintiff to work.
Affirmed.