111 N.J. Super. 426 (1970)
268 A.2d 529
LAWRENCE M. STEWARD, PLAINTIFF-RESPONDENT,
v.
ESSO STANDARD OIL COMPANY, a/k/a HUMBLE OIL & REFINING CO. AND HUMBLE OIL & REFINING COMPANY, DEFENDANTS-APPELLANTS, AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1970.
Supplemental Memoranda[*] filed June 16, 19 and 22, 1970.
Decided August 6, 1970.
*428 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Maurice B. McLaughlin argued the cause for appellants (Messrs. Galvin, French & McLaughlin, attorneys).
Mr. Samuel Jacobs argued the cause for plaintiff-respondent.
Mr. Luke A. Kiernan, Jr. filed a statement in lieu of brief and, by leave of the court, a letter memorandum on behalf of respondent Public Service Electric and Gas Company.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant and third party plaintiff Humble Oil and Refining Company (Humble), successor by merger to Esso Standard Oil Company, appeal from an adverse judgment for $35,000 in favor of plaintiff Steward[1] and from denial of its motion for a new trial.
On June 4, 1965 Steward was a welder employed by O.C. Francis Co., Inc., an independent contractor engaged by Humble to lay a six-inch pipe line on its property which bordered on 22nd Street, Bayonne. Humble's property contained four or five acres and was separated from 22nd Street by a steel fence six feet eight inches high. Beyond the fence, defendant and third party defendant Public Service Electric and Gas Company (Public Service) maintained, parallel to the fence and ten feet from it, a line of poles supporting an electric transmission line carrying 15,250 volts. In the area where the accident occurred the wires *429 hung on crossarms, the nearest wire being six feet beyond the vertical line of the fence and 37 feet from the ground.
The pipe line was intended to carry steam to a new plant. It was being installed inside the fence and three feet away from it. A crane was being used to place the sections of pipe in position on concrete pipe supports 30 inches high, after which the pipes would be fitted and welded together by Steward and his co-workers.
The crane was mounted on a truck, had a 55-foot boom and was positioned approximately 47 feet from the fence at the time of the accident. There was no signalman detailed to work with Bond, the crane operator, and the crane was not grounded. Bond testified that he was familiar with the six-foot clearance requirement of the High Voltage Act, N.J.S.A. 34:6-47.2 and 3 and with Humble's (Esso's) safety regulations which extended this prohibition to ten feet. As required by N.J.S.A. 34:6-47.4 there was a notice posted in the cab of the crane reading, "Warning Unlawful To Operate This Equipment Within 6 Feet of High-Voltage Lines."
The accident occurred as Bond was in the act of picking up a length of pipe to be placed where it was to be welded into the steam line by Steward. In the absence of a signalman, Steward had signaled Bond to pick up the pipe, but it had shifted. He then signaled Bond to swing over and pick it up again. As Bond attempted to do so, the cable on the crane "drifted out" and made contact with the overhead wire causing Steward, who was holding on to the hook at the end of the cable, to sustain a severe electrical shock.
The day of the accident was the first day that Steward had worked in this particular area of Humble's plant. In his pretrial deposition, which was read into the record, he testified he had not noticed the electric wires prior to the accident.
Steward also testified that daily work permits were issued by Humble's engineer to Francis before it started work in an area. These were of two types, "cold permits" and "hot *430 permits." Usually, before a hot permit was issued Humble's engineer would test for gas fumes and generally check the area. There was evidence that Knight, Humble's engineer, had issued Francis a hot permit on the day Steward was injured, as well as on the two prior days. Francis' foreman, Kutscher, testified that Knight's examination had included the overhead wires. Knight was never called as a witness to contradict this testimony.
Bond admitted that he was "probably familiar" with the fact that Humble's safety regulations provided that "where it is absolutely necessary to operate closer than 10 feet, special permission must be secured from the field engineer and arrangements made to cover or deenergize the circuit," but didn't think of it at the time.
The pieces of steel pipe being handled by the crane were approximately 40 feet in length and six inches in inside diameter. The crane was equipped with a steel cable which had a weighted ball and a hook at its end. To this hook Steward would attach a "cable sling" which was used to hold the pipe while it was being lifted from the ground and placed on the supports.
At the close of plaintiff's case both Humble and Public Service rested without calling any witnesses. The trial judge thereupon granted an involuntary dismissal as to Public Service and permitted the case to go to the jury as to Humble. Following the verdict in favor of plaintiff, Humble's motion for judgment n.o.v. or for a new trial was denied. It thereupon appealed from the judgment in favor of plaintiff, and from the order denying its motion for judgment n.o.v. or for a new trial. Neither plaintiff, nor Humble, appealed from the dismissal as to Public Service.
In substance, Humble's brief raises two points: (1) it owed no duty to plaintiff with respect to the high tension line and (2) plaintiff was guilty of contributory negligence as a matter of law.
We are here concerned only with the high tension power line, a fixed permanent structure which, the jury *431 impliedly found, posed a hazard to Steward and his fellow workers, as they were engaged in laying the pipe on Humble's property. No point is made by plaintiff of the fact that Humble may have been the owner, subject to the public easement, of the fee of the land on which the power line was erected.
An employee of an independent contractor, such as was Steward, who is engaged in work on the premises of an owner, who has contracted with his employer for the work he is doing, is an invitee of the owner. Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. & A. 1947). As to him the owner is duty bound to exercise reasonable care to maintain the premises, where the work is to be done, in a reasonably safe condition. Piro v. Public Service Electric & Gas Co., 103 N.J. Super. 456, 463 (App. Div. 1968), aff'd 53 N.J. 7 (1968); Gallas v. Public Service Electric and Gas Co., 106 N.J. Super. 527, 541 (App. Div. 1969), rev'd on other grounds 56 N.J. 101 (1970).
It would appear clear that, had the high tension line been located on Humble's property, the jury could well have concluded that reasonable circumspection and foresight required that it take reasonable precautions to prevent injury to Steward by reason of the proximity of the power line. Gallas v. Public Service Electric and Gas Co., supra, 106 N.J. Super. at 542. However, the main thrust of Humble's argument is that its duty as a landowner was limited to hazards existing on its premises, and did not extend to potential hazards to those working on its premises, arising from dangerous conditions existing beyond its property line.
Among factors to be considered in determining whether an owner has exercised reasonable care for the safety of the employees of a subcontractor are the nature and extent of the contemplated work, the nature of the reasonably foreseeable hazards, and the means available to cope with or guard against them. Here it is clear that the doing of the work which Steward's employer had contracted to perform would require considerable "elbow room." Essentially, it required *432 the lifting, moving and placing of 40-foot sections of steel pipe by the use of a crane which was 12 feet high and equipped with a boom 55 feet long. Thus, it was reasonably foreseeable that the boom itself, when the crane was operated in the area of the fence, might accidentally be brought into contact with the power line. In the actual placing of the pipes it was necessary that they rest on supports which were but three feet from the fence and nine feet in a vertical line from the nearest electric wire. The jury could have found from the testimony that the placing of the pipes could not have been done without raising the boom into the air to a height which approximated that of the wires.
Even if the boom were never moved beyond a point directly above the intended location of the pipe line, a suspended section of pipe could, unless restrained, turn on its own vertical axis. This would cause the pipe to project beyond the fence line into the street to a maximum distance of close to 17 feet (one half of the pipe length, 20 feet, less three feet, the distance to the fence). Further, unless the pipes were stored immediately adjacent to the fence, movement to their eventual location necessitated that the boom be swung towards the fence  and the high tension line  in which case the suspended cable could reasonably be expected to swing beyond the end of the boom, after motion of the boom had been stopped. Thus, it was not beyond the realm of foreseeability that in the handling of the crane, the boom or the cable might swing and accidentally contact, or draw an arc from, the nearest wire of the high tension line. Some confirmation of this is found in the testimony that Knight, Humble's engineer, had not only checked the conditions on the property, but also the electric wires, before issuing the permit which authorized the work to proceed.
Counsel for Humble argues that there is no New Jersey precedent for holding it liable for conditions beyond its own property. However, it cites no precedent to the contrary. The cases on which it relies, Marion v. Public Service Elec. & Gas Co., 72 N.J. Super. 146 (App. Div. 1962); Manning *433 v. Public Service Elec. & Gas Co., 58 N.J. Super. 386 (App. Div. 1959); Zentz v. Toop, 92 N.J. Super. 105 (App. Div. 1966), aff'd 50 N.J. 250 (1967); Walsh, et al. v. Madison Park Properties, Ltd., 102 N.J. Super. 134 (App. Div. 1968), and Rodrigues v. Elizabethtown Gas Co., 104 N.J. Super. 436 (App. Div. 1969), are clearly inapposite. Because most of them involved hazards which had their situs on the owner's property, is not to say that all hazards which affect the safety of the work area must be located on the property. See 35 Am. Jur., Master and Servant, § 186 (1941); cf. Burns v. Del. & Atl. Telegraph Co., 70 N.J.L. 745 (E. & A. 1904). Further, Manning v. Public Service Elec. & Gas Co., supra, was rejected as a precedent in Black v. Public Service Elec. & Gas Co., 56 N.J. 63, 79 (1970).
The answer to Humble's argument is that it is not being held liable for the danger presented by the high tension line per se, but for the dangerous condition of the area in which, under its contract with Francis, Steward and the crane operator were required to work. The jury by its verdict did no more than find that Humble had failed to exercise reasonable care to see that the work area was reasonably safe for the doing of work which, it was reasonably foreseeable, included, in the manner in which it would normally be performed, the risk of contact with the high tension line.
Reason and logic point to the conclusion that if the work area is made unsafe by the proximity of wires carrying a lethal charge of electricity, it should make no difference whether those wires are on the owner's property, or so close thereto as to interfere with the doing of the work in a normal manner. The gist of the owner's liability is the fact that the employee is being required to work too close to a hazard of which the owner knows, or should have knowledge. Clark v. Union Iron & Foundry Co., 234 Mo. 436, 137 S.W. 577, 45 L.R.A. (N.S.) 295, 301-302 (Sup. Ct. 1904). This is so even though what would constitute reasonable care under the circumstances might well depend upon whether the wires were subject to control by the landowner, *434 or whether they were off the premises and in the sole control of the power company. In the former case the jury could have found that reasonable care required that the power be shut off or the wires protected, whereas, in the latter case, which was the situation here, it could have found, inter alia, that Humble's obligation was satisfied if it had given notice to Public Service of the work being carried on by Francis and had notified Francis' employees of the risk posed by the presence of the wires.
It follows that the issue of Humble's liability was properly submitted to the jury. 35 Am. Jur., Master and Servant, op. cit., supra, at 614; 56 C.J.S. Master and Servant § 301 (1948); Clark v. Union Iron & Foundry Co., supra.
Humble's argument that Steward was guilty of contributory negligence as a matter of law is predicated upon the fact that he, an experienced employee, had reached for the cable and given the signal to the crane operator which initiated the movement of the boom, which eventually resulted in contact with the wire. We find it to be lacking in substance. Whether he was in the exercise of reasonable care was an issue for the jury's consideration. Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 222 (1954). He testified he had never worked in that particular area before and was not aware of the presence of the high tension wires. At the time he gave the signal the sun was in his eyes so that he could not see them. There was no proof that the pipe could not be picked up without contacting the wires. Actually, even if he could have seen the wires, the jury could have determined that he was justified, by reason of the work permit issued by Knight, Humble's engineer, in assuming that the wires were not dangerous. We find Shaw v. Calgon, Inc., 35 N.J. Super. 319 (App. Div. 1955) and Ferrie v. D'Arc, 55 N.J. Super. 65 (App. Div. 1959), rev'd 31 N.J. 92 (1959); Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939) and Pearlstein v. Leeds, 52 N.J. Super. 450 (App. Div. 1958), certif. den. *435 29 N.J. 354 (1959), on which Humble relies, to be inapposite.
We have reviewed the remaining points raised and find them to be without merit. Denial of the motion for a new trial did not amount to a mistaken exercise of the trial court's discretion. On the contrary, the proofs adequately support the jury's verdict. Dolson v. Anastasia, 55 N.J. 2 (1969).
In its letter memorandum, Humble urges, relying upon Gallas v. Public Service Electric and Gas Co., supra, and Black v. Public Service Elec. & Gas Co., supra, that, as an alternative to the entry of judgment in its favor, there should be a reversal of the judgment against it, and a new trial as to both defendants. In the absence of a timely appeal from the judgment in favor of Public Service, we are without jurisdiction to grant Humble the relief it seeks. Its notice of appeal may not be construed as embracing the dismissal of its third party complaint against Public Service. It did not oppose the granting of the motion to dismiss as to Public Service. In its original brief it specifically disclaimed any intention of appealing from that action. We are not called upon to determine whether, as a third party plaintiff, it would be entitled to relief under R. 4:50.
Affirmed.
NOTES
[*] With the coming down of the opinions of the Supreme Court in Black v. Public Service Elec. & Gas Co., 56 N.J. 63 (1970) and Gallas v. Public Service Electric and Gas Co., 56 N.J. 101 (1970) the application of appellant to file a supplemental brief was granted and respondents were given leave to reply thereto.
[1] Plaintiff Lawrence M. Steward died prior to the trial of the case from causes unrelated to the accident. The judgment was returned in favor of his administratrix, Irene Steward.