**Donald L. JACKSON, Plaintiff–Appellant,**

v.

**DOMTAR INDUSTRIES, INC., Defendant–Appellee.**

**No. 1776, Docket 93–9341.**

United States Court of Appeals, Second Circuit.

Argued June 29, 1994.

Decided Sept. 12, 1994.

Kevin Brown, Middlebury, VT (John F. Evers, Langrock Sperry & Wool, of counsel) for plaintiff-appellant.

Robert S. DiPalma, Paul, Frank & Collins, Inc., Burlington, VT, for defendant-appellee.

Before: KEARSE and ALTIMARI, Circuit Judges, and SEYBERT, District Judge.*

ALTIMARI, Circuit Judge:

Plaintiff-appellant Donald L. Jackson ("Jackson") appeals from a judgment entered in the United States District Court for the District of Vermont (Billings, *J.*), dismissing his action by directed verdict for failure to state a *prima facie* case of negligence against defendant-appellee Domtar Industries, Inc. ("Domtar"). Jackson sued Domtar for injuries he sustained when he fell from atop his flatbed trailer while on Domtar's premises. On appeal, Jackson contends that the district court erred in holding that he failed to produce any evidence of either a duty under the circumstances or a breach thereof. For the reasons stated below, we agree and accordingly reverse the judgment of the district court and remand for a new trial.

**BACKGROUND**

On May 7, 1990, Jackson, a flatbed trailer driver employed by S & K Transportation, delivered a load of sheetrock to a facility in Camden, New Jersey owned by Domtar. The shipment, which was covered with sheets of canvas strapped in place, consisted of various pieces of reject-quality sheetrock. Jackson asked a Domtar foreman if he could back his truck into one of several loading bays inside the facility to remove the canvas in preparation for unloading. The foreman denied his request and told him to prepare his shipment for unloading in the outside yard.

After removing the straps that held the canvas in place, Jackson climbed on top of the load of sheetrock to attempt to fold and remove the canvas. A piece of the sheetrock broke, causing Jackson to fall to the ground approximately twelve feet below. As a result, Jackson suffered disabling back and neck injuries. On April 28, 1992, Jackson commenced this diversity action, alleging that he was injured as a result of Domtar's negligence in directing Jackson to prepare his truck for unloading in an unsafe manner without the benefit of a safety harness.

At trial, Jackson offered evidence in support of his claim that Domtar breached its duty of care by failing to provide him with the opportunity to wear a harness. He testified that other Domtar facilities contained safety harnesses suspended from the ceiling to prevent injuries to persons working above ground level. Moreover, he stated that at those Domtar facilities "they won't let you inside unless you've got a hard hat on and you can't get up on the load unless you put a safety [harness] on." Jackson had also been instructed by a previous employer to use harnesses whenever they were available.

Jackson did admit, however, that when harnesses were not available, he routinely climbed on top of his load without the benefit of a harness. In fact, Jackson testified that he was on top of his load without a harness when he covered the sheetrock on the morning of the accident. Jackson testified that in his years of working on these trucks he had climbed on top of his load without a harness '1000 [or] 1500 times.' Additionally, Jackson testified that he commonly removed canvas covers from his truck while standing on the ground, although he did not attempt to do so at the Camden facility because the ground was muddy and he did not want to damage the canvas.

---

* Hon. Joanna Seybert, *Judge*, United States District Court for the Eastern District of New York, sitting by designation.

The only other witness at trial was Domtar's Human Resource Manager, who conceded that it was foreseeable that people could fall while working above the ground. He also testified that although harnesses were installed at other places in the Camden facility, they were not present in the loading bays, even though they were technologically feasible. At the close of Jackson's case, the district court granted Domtar's motion for a directed verdict, stating that "there is no evidence shown that there was a duty under the circumstances or a breach thereof."

Jackson now appeals.

## DISCUSSION

■ On appeal, Jackson argues that the district court erred by holding that no reasonable jury could conclude that Domtar breached any duty of care it owed to Jackson. We will uphold the grant of a motion for a directed verdict if, drawing all reasonable inferences and making all credibility assessments in favor of the non-moving party, there was not sufficient evidence to permit a rational juror to find in that party's favor. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 359 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). We agree with Jackson and accordingly reverse and remand for a new trial.

■ The primary issue is whether and to what extent Domtar owed Jackson a duty of care. As an initial matter, we determine the governing law in a diversity action by looking to the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Vermont courts adhere to a rule of *lex loci delicti* in personal injury actions, and we therefore apply the substantive law of New Jersey, where the accident occurred. *See Calhoun v. Blakely*, 152 Vt. 113, 564 A.2d 590, 592 n. 2 (1989); *Goldman v. Beaudry*, 122 Vt. 299, 170 A.2d 636, 638 (1961).

■ Because he was legitimately on Domtar's premises to deliver the sheetrock, Jackson was a business invitee. As such, Domtar was obligated to exercise due care to maintain its premises in a reasonably safe condition for the purposes embraced by the invitation. *See Gallas v. Pub. Serv. Elec. & Gas Co.*, 56 N.J. 101, 265 A.2d 377, 381–82 (1970). This duty of care includes the obligation to provide those safeguards that are reasonably necessary to protect business invitees from foreseeable hazards. *See Sanna v. National Sponge Co.*, 209 N.J.Super. 60, 506 A.2d 1258, 1261–62 (App.Div.1986). The question of what safeguards are reasonably necessary in light of the foreseeable risks is properly a question for the jury. *See Black v. Pub. Serv. Elec. & Gas Co.*, 56 N.J. 63, 265 A.2d 129, 135 (1970) (whether duty of due care requires defendant to undertake particular precautions is "a question of fact for determination by the jury").

■ In making this determination, a jury may consider a variety of factors, including "the nature and extent of the contemplated work, the nature of the reasonably foreseeable hazards, and the means available to cope with or guard against [those hazards]." *Steward v. Esso Standard Oil Co.*, 111 N.J.Super. 426, 268 A.2d 529, 532 (App.Div. 1970). In order to avoid entry of judgment against him as a matter of law, the plaintiff must produce some evidence that can support a reasonable inference that the defendant has not exercised reasonable care, not merely facts generating conjecture, surmise, or speculation. *See Knapp v. Phillips Petroleum Co.*, 123 N.J.Super. 26, 301 A.2d 451, 453 (App.Div.1973).

In this case, the nature and extent of the contemplated work was clear to Domtar. Jackson testified that truck drivers commonly climb on top of their loads to remove canvas covers, particularly when they are alone or when the ground is unsuitable for folding the canvas. It is therefore reasonable to infer that Domtar knew that Jackson might climb on top of his shipment to prepare for unloading.

In addition, a jury could find that a fall from atop a load was reasonably foreseeable to Domtar. Safety harnesses were present at other Domtar facilities to protect against such falls, including elsewhere in the Camden facility. According to Jackson, Domtar required deliverypersons to use harnesses in their other facilities when available. Furthermore, a Domtar foreman directed Jack-

son to ready his shipment for unloading outside. Moreover, Domtar's Human Resource Manager testified that it was foreseeable that workers might fall while working off the ground.

Lastly, a jury could find that Domtar possessed the means available to reduce the risk of injury associated with the foreseeable hazards just discussed. Harnesses were regularly used in other Domtar facilities. Furthermore, Domtar acknowledged that it was technologically feasible to install harnesses in the loading bays at the Camden facility.

Domtar makes much of the fact that Jackson presented neither expert testimony with respect to standard industry practice nor applicable statutes or regulations mandating harnesses. Jackson, however, was not required to present expert testimony given that the "conditions present before and at the time of the mishap and the danger associated with them were perfectly apparent and capable of analysis by any person of ordinary understanding." *Black*, 265 A.2d at 136. Similarly, the absence of an applicable statutory or regulatory mandate should not have precluded the jury from hearing this case. *See id.*

Although Domtar's arguments regarding industry practice and the standard of reasonable care may be persuasive, they are properly arguments for the jury. At retrial, Domtar may in fact convince the jury that it acted reasonably under the circumstances, or that Jackson was comparatively negligent. Nonetheless, Jackson presented sufficient evidence upon which a reasonable jury could conclude that Domtar owed a duty of care to Jackson which Domtar breached by failing to provide Jackson with the opportunity to wear a harness in preparing his truck for unloading. The district court therefore improperly usurped the role of the jury in directing a verdict for Domtar.

## CONCLUSION

For the above reasons, we reverse the judgment of the district court and remand for a new trial.