Young, J.,
concurring in the result:
Judge Cardozo may have indeed been correct in opining that the power of the precedent is only “the path of the beaten track.” Benjamin Nathan Cardozo, The Growth of the Law 62 (1927). In the case presently under review, however, I am compelled to agree with Justice Jackson that “the mere fact that a path is a beaten one is a persuasive reason for following it.” Robert H. Jackson, Full Faith and Credit — The Lawyer’s Clause of the *1043 Constitution, 45 Colum. L. Rev. 1, 26 (1945). I find no compelling reason to abandon the beaten path to adopt the significant relationship approach to resolve choice of law problems because I am not convinced that the approach is analytically superior.
The distinctions that the significant relationship approach demands judges to make are often murky, prompting an Oregon court to lament that applying the approach resembles “skeet shooting with a bow and arrow: a direct hit is likely to be a rarity, if not pure luck.” Fisher v. Huck, 624 P.2d 177, 178 (Or. Ct. App. 1981). One need look no further than to the dissenting opinion to find cause for the lamentations of the Oregon court. After all, the presence of the Motenkos in Nevada in 1990, followed by over forty million tourists in 1994, was not a mere fortuity. The Motenkos were business invitees of the MGM, which is a Nevada corporation. Thus, Nevada is the place where the injury, the conduct causing the injury, and actions to redress the injury occurred. The vested rights approach, even if it is, as one might infer from the dissenting opinion, a toothless old dog, retains a sense of smell keen enough to determine in these circumstances that Nevada law should be applied.
The dissent is, however, distracted by different odors, leading it to what I believe is an intolerable result. Applying the significant relationships test, the dissent concludes that the law of Massachusetts, the domicile of the Motenkos’ marriage, should be applied to determine whether a loss of parental consortium is compensable. This, the dissent reasons, is because Nevada has no interest in determining the intra-family rights of the Motenkos, even if the state has an interest in the underlying cause of action.
This reasoning will no doubt come as a surprise to the MGM, its employees, and the vast numbers of Nevada residents who are dependent upon the tourist industry. Considering that compensation for interruption of the intra-family rights of the Motenkos will ultimately be extracted from the pockets of Nevada citizens, I respectfully suggest that the distinction drawn by the dissent is meaningless.
Nevada must protect its tourist industry as a matter of public policy. See NRS 463.0129(l)(a) (stating that “[t]he gaming industry is vitally important to the economy of the state and the general welfare of the inhabitants”). Indeed, because millions of non-residents regularly avail themselves of the exotic attractions of our state, it is safe to say that a relatively greater proportion of non-residents are slipping on loose tiles in Nevada than they are elsewhere. For this reason, I do not think it unreasonable to require non-resident tourists, while they are in Nevada, to be subject to Nevada laws.
*1044 Adoption of the significant relationship approach hinders promotion of this public policy. Furthermore, as the dissent recognizes, our legislature has not seen fit to afford the citizens of this state the benefits of a cause of action for loss of parental consortium. Thus, Nevada citizens are themselves barred from bringing such a claim in Nevada courts, and possibly in other courts applying the significant relationship approach. Because Massachusetts has modified the traditional vested rights approach, see Pevoski v. Pevoski, 358 N.E.2d 416, 417 (Mass. 1976) (applying interest analysis), Nevadans visiting Massachusetts should exercise caution. Nevada children whose parents fall victim to bad clam chowder would conceivably be unable to recover for loss of consortium in that state. This is an unjust result which the vested rights approach, for all its faults, would not produce.
Our Nevada trial courts are also required to render justice in an inexpensive and speedy manner. See NRCP 1 (stating that the rules of civil procedure “shall be construed to secure the just, speedy, and inexpensive determination of every action”). The significant relationship approach does little to help meet this requirement. At the time the significant relationship approach was hatched, legal scholars recognized that an analysis of relevant interests “can be expected to cast an intolerable burden upon the overworked trial courts.” Willis L. M. Reese, Chief Judge Fuld and Choice of Law, 71 Colum. L. Rev. 548, 559 (1971). This is because trial courts are required to analyze the relevant interests of each jurisdiction and party in order to make a proper choice of law. In weighing relevant interests, trial courts must distinguish between laws designed to influence conduct, allocate loss, and establish recovery after liability is established. Each type of law gives rise to different governmental and individual interests.
These various types of laws are all implicated, for instance, in an action to recover for damages incurred in an alcohol-related auto accident, an all-too-common tort. If a non-resident is struck in Nevada by a drunk driver, could the district court be forced to apply a foreign dram-shop act? See Lea Brilmayer, Interest Analysis and the Myth of Legislative Intent, 78 Mich. L. Rev. 392, 402-07 (1980). Should we apply a foreign dram-shop act if an intoxicated non-resident hits a Nevada resident? If the intoxicated non-resident is a minor, should we seek to apply possible common law recovery mechanisms found in his home state? What about punitive damages? comparative fault statutes? strict liability variations? See John B. Austin, A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation, 58 J. Air L. & Com. 909, 926-79 (1993) (hereinafter “Austin”).
*1045 The dissent provides an example of the surprises that may be encountered in determining who is entitled to recover for damages. Should we apply Massachusetts law to determine whether to place caps on recovery? How should the recovery be calculated? Does Massachusetts hold a greater interest than Nevada in determining whether an award for loss of parental consortium should be reduced to present value? A district court should not be forced to answer these and many other similar questions, not only because of complexity and expense but because of uncertainty and the possibility of manipulation. These drawbacks led the Supreme Court of West Virginia to render the following candid admission:
[W]e remain convinced that the tradition rule [i.e., the vested rights approach], for all of its faults, remains superior to any of its modern competitors. Moreover, if we are going to manipulate conflicts doctrine in order to achieve substantive results, we might as well manipulate something we understand. Having mastered marble, we decline an apprenticeship in bronze.
Paul v. National Life, 352 S.E.2d 550, 556 (W. Va. 1986).
Moreover, the problems encountered in choosing the proper law grow exponentially when many parties are involved. Complex tort litigation involving the significant relationship approach has been characterized by one commentator as “a lawyer’s nightmare.” Austin at 913. I suspect that the lasting trauma of this nightmare will be ultimately experienced by litigants and the district courts, not lawyers. Litigants are the ones paying to establish what interests are involved, through expert testimony and other means. This added expense and accompanying uncertainty affects every stage of an action, from the prayer for relief, through offers of settlement, to judgment, and favors the wealthy over the poor litigant.
These problems outweigh any comfort we may feel in knowing that the underpinnings of our new-found approach are philosophically intimidating. Witness the reasoning of an early proponent of the significant relationship approach: “We emphasized that what we adopted was not a rule, but a method of analysis that permitted dissection of the jural bundle constituting a tort and its environment to determine what elements therein were relevant to a reasonable choice of law.” Conklin v. Horner, 157 N.W.2d 579, 581 (Wis. 1968). After considering the pros and cons, however, I am inclined to agree with the Supreme Court of West Virginia, which responded to Conklin as follows: “That sounds pretty intellectual, but we still prefer a rule. The lesson of history *1046 is that methods of analysis that permit dissection of the jural bundle constituting a tort and its environment produce protracted litigation and voluminous, inscrutable appellate opinions, while rules get cases settled quickly and cheaply.” Paul, 352 S.E.2d at 554.
Presumably for these reasons, a clear consensus of jurisdictions does not appear to embrace fully the significant relationship approach. Instead, many jurisdictions have devised their own formulae for making a proper choice of law. See, e.g., Rice v. Nova Biomedical Corp., 38 F.3d 909, 915 (7th Cir. 1994) (noting in Illinois that the law of the place of the accident retains mild presumptive weight); Chrysler Corp. v. Skyline Indus. Services, Inc., 528 N.W.2d 698, 702 (Mich. 1995) (refusing to adopt a significant relationship or any other test, and recognizing that each case should be analyzed individually); O’Connor v. O’Connor, 519 A.2d 13, 19 (Conn. 1986) (following the vesting rights approach unless it would produce an improper result). For the foregoing reasons, I respectfully submit that the vested rights approach continues to be the best formula for Nevada.
Evidently feeling as I do, a large number of states remain unintimidated by the obscure dicta of Allstate Ins. Co. v. Hague, 449 U.S. 302 (1981). See, e.g., Jackson v. Domtar Industries, Inc., 35 F.3d 89, 92 (2nd Cir. 1994) (recognizing that Vermont still follows the vested rights approach); Stokes v. Southeast Hotel Properties, Ltd., 877 F. Supp. 986, 995 (W.D.N.C. 1994) (recognizing continued use of the lax loci delicti principle in North Carolina); Clark v. Associates Commercial Corp., 870 F. Supp. 1011, 1014 n.3 (D. Kan. 1994) (noting that Kansas continues to follow the vested rights doctrine); Mullings v. M.G.D. Graphics Systems Group, 867 F. Supp. 1578, 1580 (N.D. Ga. 1994) (noting that Georgia follows the vested rights doctrine); Rhee v. Combined Enterprises, Inc., 536 A.2d 1197, 1198 (Md. Ct. Spec. App. 1988) (affirming use of the vested rights approach in Maryland). Far from doing away with the vested rights approach, Allstate in fact recognized its continued use. See Allstate, 449 U.S. at 316 n.22.
I respectfully submit that the focus of this court’s concern should be upon the needs of this state, not upon whether this court is deemed to be progressive in the eyes of judicial colleagues outside our borders. I would, therefore, affirm the district court’s order.